Filed 2/18/22

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| In re H.V., a Person Coming Under the Juvenile Court Law. | B312153 (Los Angeles County Super. Ct. No. 20CCJP06436A) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>S.V.,<br><br>    Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Debra L. Losnick, Judge.  Conditionally affirmed with directions.

Marissa Coffey, under appointment by the Court of Appeal, for Defendant and Appellant.

Rodrigo A. Castro-Silva, County Counsel, Kim Nemoy, Assistant County Counsel, and Sally Son, Deputy County Counsel, for Plaintiff and Respondent.

## I.     INTRODUCTION

S.V., mother of now three-year-old H.V., appeals from the juvenile court's jurisdiction and disposition orders contending that the juvenile court and the Los Angeles County Department of Children and Family Services (Department) failed to comply with their duties under the federal Indian Child Welfare Act (ICWA) and related state statutes and court rules.  We conditionally affirm the court's orders but remand for the limited purpose of ensuring compliance with ICWA's requirements.

## II.     BACKGROUND[1]

A.     *Welfare and Institutions Code Section 300[2] Petition*

The juvenile court sustained the Department's December 7, 2020, section 300 petition that alleged mother had engaged in a violent altercation with a female companion in the child's presence.  Mother had brandished a knife and pushed the

---

[1]     Because the sole issue mother raises on appeal concerns the juvenile court's and the Department's compliance with ICWA and related state statutes and court rules, we limit our recitation of facts to those relevant to that compliance issue except as is necessary for context.

[2]     All further statutory references are to the Welfare and Institutions Code.

2

female companion.  Mother's violent conduct endangered the child's safety and placed the child at risk of harm.

B.    *ICWA Facts*

On December 4, 2020, a social worker inquired of mother about the child's Indian ancestry.  Mother did not give the social worker any reason to believe the child was or might be an Indian child.  As part of the Department's preparation of the detention report, a social worker interviewed the child's maternal great-grandmother, C.W. (who is alternatively referred to as a "cousin" and "maternal aunt"), and maternal great-grandfather.  But the record does not indicate whether the social worker asked any of these relatives about the child's Indian ancestry.  On December 11, 2020, mother filed a Parental Notification of Indian Status form stating that she did not have any Indian ancestry as far as she knew.

At the December 11, 2020, Detention Hearing, the juvenile court found that mother did not have Indian ancestry as far as mother knew.  If that changed, mother was to inform the court and the social worker.

The juvenile court then inquired whether mother knew if alleged father, I.G.,[3] had Indian ancestry.  Through counsel, mother indicated that alleged father did not have Indian ancestry.  The court found it had no reason to know that alleged father had Indian ancestry.  If alleged father made a court appearance, the court would revisit the issue.  If mother acquired

---

[3]    Alleged father, whose whereabouts below were unknown, is not a party to this appeal.

information that alleged father had Indian ancestry, she was to inform the court and the social worker.

On February 1, 2021, mother denied to the Department that she had any Indian ancestry.

## III.  DISCUSSION

A.  *Inquiry Duties Under ICWA*

Pursuant to ICWA, "[i]n any involuntary proceeding in a State court, where the court knows or has reason to know that an Indian child is involved, the party seeking . . . termination of parental rights to[ ] an Indian child shall notify the parent or Indian custodian and the Indian child's tribe" of the pending proceedings and its right to intervene.  (25 U.S.C. § 1912(a); *In re Isaiah W.* (2016) 1 Cal.5th 1, 8 (*Isaiah W.*).)  "As the Supreme Court recently explained, notice to Indian tribes is central to effectuating ICWA's purpose, enabling a tribe to determine whether the child involved in a dependency proceeding is an Indian child and, if so, whether to intervene in or exercise jurisdiction over the matter.  ([ ] *Isaiah W., supra*, 1 Cal.5th at pp. 8[–]9.)" (*In re Michael V.* (2016) 3 Cal.App.5th 225, 232.)

"ICWA defines an 'Indian child' as 'any unmarried person who is under age eighteen and is either (a) a member of an Indian tribe or (b) is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe.'  (25 U.S.C. § 1903(4); see § 224.1, subd. (a).)  The trial court and [Department] have an affirmative and continuing duty in every dependency proceeding to determine whether ICWA applies.  (§ 224.2, subd. (a); Cal. Rules of Court, rule 5.481(a);[fn. omitted.]

4

*Isaiah W., supra*, 1 Cal.5th at pp. 10–11.)  In cases 'where the court knows or has reason to know that an Indian child is involved,' ICWA requires the [Department], or other party seeking adoption or foster care placement, to notify 'the Indian child's tribe, by registered mail with return receipt requested, of the pending proceedings and of their right of intervention.'  (25 U.S.C. § 1912(a); see *Isaiah W., supra*, [1 Cal.5th] at p. 5.)

"Following changes to the federal regulations concerning ICWA compliance, California made conforming amendments to its statutory scheme regarding ICWA, effective in 2019.  (*In re D.S.* (2020) 46 Cal.App.5th 1041, 1048 . . . (*D.S.*).)  In *D.S.*, the court explained that the resulting clarification of law, found in part in section 224.2, 'creates three distinct duties regarding ICWA in dependency proceedings.  First, from the [Department]'s initial contact with a minor and his family, the statute imposes a duty of inquiry to ask all involved persons whether the child may be an Indian child.  (§ 224.2, subds. (a), (b).)  Second, if that initial inquiry creates a "reason to *believe*" the child is an Indian child, then the [Department] "shall make *further inquiry* regarding the possible Indian status of the child, and shall make that inquiry as soon as practicable."  (*Id.,* subd. (e), italics added.)  Third, if that further inquiry results in a reason to *know* the child is an Indian child, then the formal notice requirements of section 224.3 apply.  [Citations.]'  (*D.S., supra*, [46 Cal.App.5th] at p. 1052.)

"At the first step, '[s]ection 224.2, subdivision (b) specifies that once a child is placed into the temporary custody of a county welfare department, such as the [Department], the duty to inquire "includes, but is not limited to, asking the child, parents, legal guardian, Indian custodian, extended family members,

5

others who have an interest in the child, and the party reporting child abuse or neglect, whether the child is, or may be, an Indian child.'" (*D.S., supra*, 46 Cal.App.5th at pp. 1048–1049.)" (*In re Charles W.* (2021) 66 Cal.App.5th 483, 489 (*Charles W.*).)

We review claims of inadequate inquiry into a child's Indian ancestry for substantial evidence. (*In re Rebecca R.* (2006) 143 Cal.App.4th 1426, 1430 (*Rebecca R.*).)

B.    *Analysis*

The record reflects that the only person with whom the Department spoke about the child's possible Indian ancestry was mother. The Department's first-step inquiry duty under ICWA and state law was broader, requiring it also to interview, among others, extended family members and others who had an interest in the child. (§ 224.2, subd. (b); *Charles W., supra*, 66 Cal.App.5th at p. 489; *D.S., supra*, 46 Cal.App.5th at pp. 1048–1049.)

The Department does not contend that it discharged its first-step inquiry duty, thus effectively conceding that it did not. Instead, the Department argues that because mother has not made an "affirmative representation of Indian [ancestry] on appeal," she has failed to show prejudice and that remand is necessary for the Department to discharge its inquiry duty. That is, the Department argues, "Any failure to comply with . . . ICWA must be held harmless unless [mother] can show a reasonable probability that . . . she would have enjoyed a more favorable result in the absence of the error." (Citing *In re A.C.* (2021) 65 Cal.App.5th 1060, 1069 and *Rebecca R., supra*, 143 Cal.App.4th at pp. 1430–1431.)

6

Mother does not have an affirmative duty to make a factual assertion on appeal that she cannot support with citations to the record.[4] (See *Liberty National Enterprises, L.P. v. Chicago Title Ins. Co.* (2011) 194 Cal.App.4th 839, 846.) Instead, on this record, which demonstrates that the Department failed to discharge its first-step inquiry duty, we conclude that mother's claim of ICWA error was prejudicial and reversible. (See *In re N.G.* (2018) 27 Cal.App.5th 474, 484.)

---

[4] We note that the Department's failure to discharge its inquiry duty under ICWA and state law is responsible for the absence of information in the record about the child's possible Indian ancestry.

# IV.   DISPOSITION

The jurisdiction and disposition orders are conditionally affirmed and the matter is remanded with directions to the juvenile court to order the Department to comply with ICWA as follows:

1.       The Department shall conduct an inquiry investigation into the child's Indian ancestry, including making diligent efforts to interview the child's extended family members as defined by section 224.1, subdivision (c) and 25 U.S.C. section 1903(2) including at least mother, maternal great-grandmother, C.W., and maternal great-grandfather for the purpose of obtaining information required for ICWA notice compliance.

2.       If from that initial inquiry the Department has a reason to believe the child is an Indian child, then, as soon as practicable, it shall make further inquiry regarding the child's possible Indian status.

3.       If from that further inquiry the Department has a reason know the child is an Indian child, then it shall comply with the formal notice requirements in section 224.3.

4.       The Department shall document its investigation, including its interviews with family members and attempts to conduct such interviews, its contact with tribes, if any, and any information obtained from the tribes, and provide that documentation to the juvenile court.

5.       The juvenile court shall conduct a noticed hearing to review the adequacy of the Department's investigation.  If the court determines the Department's investigation was adequate and there is no reason to know the child is an Indian child as that

term is defined under ICWA, then the jurisdiction and disposition orders shall remain in place.

6. If the court determines the Department's investigation was adequate and there is a reason to know the child is an Indian child as that term is defined under ICWA, then the jurisdiction and disposition orders are reversed and the Department shall provide adequate ICWA notice to the tribe or tribes, mother, alleged father, and the regional Bureau of Indian Affairs and shall proceed thereafter in compliance with ICWA and related California statutes.

KIM, J.

I concur:

MOOR, J.

9

In re H.V.
B312153


BAKER, Acting P. J., Dissenting



Recent revisions to California statutes intended to implement the Indian Child Welfare Act (ICWA) are proof of what we have known since at least the time of Aristotle: you can have too much of a good thing.

The facts pertinent to this appeal are undisputed and can be quickly summarized. When questioned by a Los Angeles County Department of Children and Family Services (Department) social worker about whether her child H.V. could be an Indian child, S.V. (Mother) gave the social worker no reason to believe he was. When filing a Parental Notification of Indian Status form upon commencement of dependency proceedings, Mother checked the box stating she had no Indian ancestry as far as she knew. When questioned by the juvenile court at an initial hearing about whether H.V.'s alleged father (who did not appear at the hearing) had any Indian ancestry, Mother said he did not. And there was nothing before the juvenile court that otherwise suggested H.V. might be an Indian child.

Unlike the facts, the pertinent ICWA-related law in California is anything but straightforward. As a result of statutory revisions made by the Legislature beginning in 2018, the Welfare and Institutions Code now has a Byzantine scheme of

inquiry,[1] further inquiry,[2] reason to know,[3] and reason to believe[4] that is challenging to even summarize (italics or subheadings are

---

[1]     Welf. & Inst. Code, § 224.2, subd. (b) ["Inquiry includes, *but is not limited to*, asking the child, parents, legal guardian, Indian custodian, extended family members, others who have an interest in the child, and the party reporting child abuse or neglect, whether the child is, or may be, an Indian child and where the child, the parents, or Indian custodian is domiciled"], italics added.

[2]     Welf. & Inst. Code, § 224.2, subd. (e)(2) ["Further inquiry includes, *but is not limited to*, all of the following:  [¶]  (A) Interviewing the parents, Indian custodian, and extended family members to gather the information required in paragraph (5) of subdivision (a) of Section 224.3 [and boy is that a long list of information].  [¶]  (B) Contacting the Bureau of Indian Affairs and the State Department of Social Services for assistance in identifying the names and contact information of the tribes in which the child may be a member, or eligible for membership in, and contacting the tribes and any other person that may reasonably be expected to have information regarding the child's membership status or eligibility.  [¶]  (C) Contacting the tribe or tribes and any other person that may reasonably be expected to have information regarding the child's membership, citizenship status, or eligibility.  Contact with a tribe shall, at a minimum, include telephone, facsimile, or electronic mail contact to each tribe's designated agent for receipt of notices under [ICWA]. Contact with a tribe shall include sharing information identified by the tribe as necessary for the tribe to make a membership or eligibility determination, as well as information on the current status of the child and the case"], italics added.

[3]     Welf. & Inst. Code, § 224.2, subd. (d) [enumerating six circumstances providing "reason to know" a child is an Indian child].

2

often required (see, e.g., *In re Y.W.* (2021) 70 Cal.App.5th 542, 552; *In re D.F.* (2020) 55 Cal.App.5th 558, 566 (*D.F.*)) and impossible to satisfy in practice.  That is so in part because, with repeated references to "including but not limited to" in the relevant statutory subdivisions, there is no endpoint.  The Department has no way to reliably know when to say when—i.e., to predict how many interviews of extended family members and others will be enough to satisfy a court that it has discharged its continuing duty to investigate whether a minor could be an Indian child.

This unpredictability in the law is a real problem.  It is beyond dispute that ordering a child services agency to try to run down suggestions of possible Indian heritage has real costs to the agency's core mission of keeping children healthy and safe—there are only so many hours in a day and only so many child services agency employees on the payroll.  While these costs at even a high price are worth the benefit (preserving tribal heritage by ensuring that children who are eligible for tribal membership do not move through the dependency system without opportunity for tribal involvement), the costs swamp the benefits when courts read the statutory scheme to require child services agencies to

---

[4]     Welf. & Inst. Code, § 224.2, subd. (e)(1) ["There is reason to believe a child involved in a proceeding is an Indian child whenever the court, social worker, or probation officer has information suggesting that either the parent of the child or the child is a member or may be eligible for membership in an Indian tribe.  Information suggesting membership or eligibility for membership includes, *but is not limited to*, information that indicates, but does not establish, the existence of one or more of the grounds for reason to know enumerated in paragraphs (1) to (6), inclusive, of subdivision (d)"], italics added.

3

undertake exhaustive efforts to run down even the most remote, unlikely possibility of Indian heritage such that the agencies functionally end up trying to prove a negative.

I believe a proper application of the governing substantial evidence standard of appellate review mitigates some of the flaws in the statutory scheme. It is well established that "[w]e review a juvenile court's finding that ICWA does not apply for substantial evidence." (*In re S.R.* (2021) 64 Cal.App.5th 303, 312; accord, *D.F.*, *supra*, 55 Cal.App.5th at 568 ["We review the record for substantial evidence in support of the juvenile court's finding that ICWA did not apply"].) Under that standard, "'[w]e review the evidence in the light most favorable to the dependency court's findings and draw all reasonable inferences in support of those findings. [Citations.] Thus, we do not consider whether there is evidence from which the dependency court could have drawn a different conclusion but whether there is substantial evidence to support the conclusion that the court did draw.'" (*In re J.N.* (2021) 62 Cal.App.5th 767, 774.)

Here, there is substantial evidence supporting the juvenile court's determination that ICWA does not apply. Mother denied any Indian heritage, she said the alleged father had no such heritage either, and there was no other information before the court that would suggest H.V. might be an Indian child. Under the deferential standard of review that governs, we should not disturb the juvenile court's finding that ICWA does not apply on this record.

The majority disagrees and does the best it can, with the statutes we have, to articulate what it believes the Department must do to satisfy its ICWA obligations on remand. But the majority's instructions only highlight the unpredictability the

4

Department still faces.  According to the majority, the Department must ask ICWA questions of "at least" the maternal great grandmother, the maternal great grandfather, and Mother (yet again, apparently).  Then, if there is "reason to believe" (in the statutory parlance:  information including, but not limited to, "information that indicates, but does not establish, the existence of one or more of the grounds for reason to know enumerated in paragraphs (1) to (6), inclusive, of subdivision (d)") that H.V. is an Indian child, the Department must make "further inquiry" that the majority does not detail.  And if that unspecified further inquiry produces reason to know H.V. is an Indian child (using the same criteria the Department is supposed to use when assessing whether there was "reason to believe"), the Department must provide formal notice to tribes and government personnel it was already statutorily required to contact as part of its "including but not limited to" further inquiry obligation.

These instructions leave much to be desired.  If the Department is to achieve any measure of simplicity and predictability, the Department may be left to follow a new unspoken rule:  interrogate every person contacted in a child welfare investigation about ICWA issues and hope both the juvenile courts and reviewing courts will agree that is enough.  If this indeed becomes the rule in practice, and if an appellate remand will be the result for any noncompliance, I suspect it is not just going to be the Department that will be busy—this court is going to have an awful lot of conditional reversing (or affirming) to do, with all the problems that will cause for the prompt resolution of dependency proceedings.[5]

---

[5]    The problems will be particularly acute where ICWA-related issues are most frequently raised:  appeals challenging

5

I respectfully dissent.


BAKER, Acting P. J.

---

orders terminating parental rights.  A conditional reversal (or affirmance) of such orders inevitably delays an adoption from proceeding, and in some cases, it may throw an adoption off track entirely if the prospective adoptive family cannot tolerate further delay.  In both scenarios, the uncertainty caused by California's ICWA-related statutes negatively affects children who deserve permanence without undue delay.

6